Good morning. May it please the Court, I'm Tom Belasteguy here on behalf of Bullion Monarch Mining. And you'll need to move your microphone just up a little bit. It's great. The acoustics aren't the best here, so thank you. That's good. I'll try to remember myself. I often lower my voice. Tom Belasteguy, I'm here on behalf of appellant Bullion Monarch Mining. I'm here to argue the Newmont case. There were two cases consolidated for this appeal. Appellant Bullion Monarch filed an action against Newmont Mining and also against Barrick Gold Strike Mining. This Newmont case appeal involves a motion for summary judgment based upon latches. It was granted by the lower court. There were four motions for summary judgment filed by Newmont. One of the motions was a combination motion for summary judgment based upon claim, preclusion, and latches.   So those two motions are different, and those two are combined. Latches often isn't resolved at summary judgment. The question of latches is not resolved at summary judgment very often. But I take it in this case the facts were undisputed. Is that true? There are definitely facts undisputed, Your Honor. And as we set forth in our brief, the law on the defense of latches is fairly well settled. There are two prongs in the argument. One is that there's been an unreasonably long delay in a party asserting its rights. The second prong is that that delay caused prejudice to the other party. And the cases also say that each case where the doctrine of latches is raised is to be determined by the facts in that case, of course, because that's what determines. Now, there are a couple of facts I would really like to emphasize initially in this case. And one very important one is this. The motion for latches that was granted in the lower court in this case was based upon expenditures on two mining properties within the area of interest. And we have a diagram here to demonstrate. But one of the properties is the Deep Star property, and the other one is the Post property. And there was an affidavit submitted in support of the motion for summary judgment based on latches, saying that Newmont had expended money to develop and put those two mining properties into operation. The motion was granted on the grounds that Bowdoin Monarch had unreasonably waited in asserting its rights and that there was prejudice. Now, very, very clearly, and we raised this in a motion for reconsideration in the lower court, the motion did not reference other properties that are at issue in this lawsuit because no money has been expended on the other property. And in our motion for reconsideration, asked the court to say that the motion only applied to the two properties where evidence was submitted as to the amounts expended. Nevertheless, the court said that would that doesn't make sense that I can only grant it as to two properties, even though all of the evidence as to prejudice was to two mining properties in the area of interest. Didn't even mention the other properties. Some of the other properties are at issue in other motions that Newmont filed. There are clearly other properties. But even in the decision on the motion for reconsideration, the court said even though amounts or at least not significant amounts have been expended on other properties, have not been expended on other properties, the whole case is dismissed. So that is one area that we think is very, very clear. Can I just clarify as a factual matter? I mean, I've spent a fair amount of time trying to figure out. There are lots of moving pieces just factually here. And I understand that we've got the two properties within the area of interest. Are the other properties with respect to which you say there's been no significant expenditure yet, are they so-called subject properties or are they area of interest properties? Well, they're area of interest properties under the agreement which gives the royalty rights to our client. So the entire rectangle there is area of interest, not just the circled area? Usually charts help. This chart is confusing me. I put a circle around the two properties because those are the only two properties mentioned. But just to make sure. So the entire rectangle is area of interest? Right. Circle is what makes it confusing. I said it's the circle that makes it look like there's a carve-out. These are area of interest properties that you claim should be part of the subject property under the agreement but would not have been subject to the original document. Am I making myself clear or not? Well, when Judge Fletcher says area of interest properties, he's talking about areas you say, well, they were folded in, but that's the legal conclusion based on the contract. We're talking about a geographic area. Are we on the same page here? Yes. Okay. And I gather there's no dispute here in front of us as to royalties owed on subject properties. That is to say, those royalties are being paid? Well, under the terms of the agreement, the original subject property is what's referred to as the Leeville mine. Right. It's the block right in the middle. Yeah. The agreement also said that there's an area of interest, and if properties are acquired hereafter by the owner or operator of the Leeville mine, those properties will be subject to the royalty. I got it. But I want to make sure. And they will become part of these. Right. But what's being disputed here is royalties owed on properties within the area of interest. Correct. Only. Correct. Okay. Got it. Now, but the point I really wanted to emphasize is that the motion based upon a latches argument only references two properties on which money had been expended to develop. Right. Got it. Yeah. It took me a while to get there. And there's absolutely no mention of prejudice as to other properties. Got it. Okay. Now, moving forward as to the motion based upon latches for the two properties at issue, during discovery and in all of the motions, Neumann admitted that or took a position that the only properties that might be subject to Boyan's royalty at the current time, at was a deep star in the deep post because those were the only properties that had been put into production and that were acquired by Neumann after 1991. And 1991 is a key date because that's the date that Neumann acquired the Leeville mine and came under the umbrella of the area of interest. And Neumann said, those are the only two properties that we've put into production. The other properties we have not put into production. So we're only going to give you information, Boyan, in discovery on these two properties, deep star and deep post. And we got answers as to production. We didn't get answers as to the dollar amounts that the gold and silver were sold for, but we got answers about production, how many ounces of gold were produced in each year and how many ounces of silver. However, those answers were amended later. Neumann came back and said, we have reviewed our files and only a small portion of the deep star and the deep post mines were acquired post-1991 when we came under the umbrella of the area of interest provision. Therefore, for example, when we told you before that we had produced 200,000 ounces of gold and 50,000 ounces of silver from the deep star, we need to amend that. We've only taken out 15,000 ounces of gold and 5,000 ounces of silver on additional property that we expanded onto post-1991. So my point is this. In the motion for summary judgment based on latches, when Neumann says we have expanded $700 million, nearly $700 million, in developing these two mines, Neumann never comes back and says, but only a small portion of that development can be attributed to what would be Bullion's royalty. And the district court took that large amount of money, the $700 million, and said it only makes sense, economic sense, that Neumann would be prejudiced. And in the motion, at no time ever did Neumann say, if Bullion had asserted its royalty rights sooner, we would not have gone forward with development of these two mines. And the district judge, I think, in a sense recognizes that because in his order, he uses the words like might or might not have. Exactly. And it's very important. The district court said this. Indeed, Neumann might well not even have gone forward with the investment at issue had Bullion affirmatively asserted its rights to such a royalty in a timely manner. And that's pure speculation. That wasn't even in the affidavit supplied in support of the motion based on latches. Neumann didn't say we would not have done this or we might not have done it. For purposes of latches, is it necessary to show merely that there has been a substantial expenditure by Neumann, or does Neumann need to show in addition that they would not have made the expenditures had the claim been made earlier? There must be a showing of prejudice that they would not have made the expenditure. There cannot be a showing of money alone, just like there cannot be a showing of delay alone. In the case of the Tucson Power case, 25 years went by. And a Citizens Group filed suit to say you're in violation of the some environmental, I think the Clean Air Act, since day one, starting 25 years ago. The court said that's okay. There's no prejudice. Oh, that's interesting. Who wrote that? Who wrote that opinion? And there are cases as short as four months. I'm trying to figure out what qualifies as prejudice under Nevada law. Well, Nevada law is very similar to what this Court held in Enri Beatty, that the time is a factor, but it's not the primary factor.    The time alone does not constitute laches, and there must also be very specific information on the issue of prejudice. Could you also elaborate then on the prejudice argument where that came sequentially in the district court because was it only on the motion for reconsideration? That what? On the prejudice argument? That you raised it. That you raised it. Well, and that's what the district court said. Correct. So was that? Well, let me just ask you what, in your view, was the district court wrong, and if so, why? The district court is wrong because expenditure of money does not amount to prejudice. No, no. We're talking about when the issue was raised. Raising the issue. When it really raised the issue. When it got in front of the district court to consider that as an element of a laches argument. Do you understand what I'm saying? Well, there was less cited in the original motion that laches is. Do you understand, I mean, that the district court says that this prejudice issue, in its view, wasn't really raised until the motion for reconsideration? I understand that. I mean, okay. Yes. But there are cases that if there isn't even an opposition to a motion based upon laches, the affidavit must still substantiate the prejudice. Okay. May we back you up just a second? Did you raise the question of prejudice prior to the motion for reconsideration or not? Specifically, no. Okay. Then why is the district court not wrong, then, in saying it's too late? Because, as I just said, there's case law that says even if a motion for summary judgment based upon laches is unopposed, there still must be a specific allegation as to prejudice. And that is not here, as the district court found by saying, who knows, might or might not have gone forward if Bullion had asserted its rights sooner. That can't happen. I'm having trouble with understanding what was or was not raised because in its original order, not the order in response to the motion for reconsideration, in its original order, the district judge considers whether there is prejudice and concludes that there has been some. So the issue of prejudice is in front of him. The question is what arguments had been made with respect to prejudice. Well, the arguments that were made by Newmont, and their motion is a matter of record, is, A, Newmont spent money developing the Deep Storm, the Deep Pulse mines, which, by the way, it says hundreds of millions of dollars, and it costs us that much to develop every mine, and therefore prejudice. Let me ask you this. I guess I'll ask the other side as well. Whose burden is it in a Latches case to show prejudice? Oh, very clearly the moving party. So we need to look and see whether they've got sufficient evidence in here. And so what's your burden? Your burden is just to say not enough? Correct. Did you say in front of the district judge before the motion for reconsideration that there was not enough evidence of prejudice introduced? Specifically, no. We just said the motion should be denied. It's not amply supported. But then they did introduce this evidence from the controller about the amount and what it related to. So the evidence was there, but you didn't argue that it wasn't sufficient to show prejudice, right? Until the motion for reconsideration. That's correct. And something else I want to point out, though, because there was not a sufficient allegation of prejudice as is was even discovered by the lower court when he says, indeed, Newmont might well not even have gone forward with the investments at issue. There wasn't even enough there for the court to say, Newmont says it wouldn't have gone forward, and that's prejudice. Okay. I guess I need to look precisely at your papers filed in the district court in opposition of the motion for summary judgment, which I have not yet done, as to whether or not it appears to me that you've made enough objection as to whether or not there's been a showing for prejudice. Okay. Now, a couple more points, if I may. Okay, quickly. When we filed the motion for reconsideration, we pointed out to the judge. Judge, even you weren't convinced. You say, indeed, Newmont might not have, and he also says on the next page, it would be inequitable for Bullion to benefit now by recovering a royalty on mining activity that might or might not have ever occurred had Bullion not delayed in bringing suit. Okay. So here's what you're saying. No, but you're over your time now. So if you want to, we'll give you a couple minutes for rebuttal. Okay. Thank you. We can't let you launch into a new argument at this point. Morning, and may it please the Court. My name is Steve Meschaki. I represent Newmont. Your Honors, the district judge here did exactly the right thing under this Court's precedent. Bent over backwards to give Bullion the benefit of the doubt on the couple of disputed facts and then exercise proper discretion in applying the laches factors to those facts and finding that there was an unreasonable delay here. The Court further was correct in holding that there was no, no, nothing, not one word in Bullion's papers, either in its response to the summary judgment motion or in its supplemental brief, which the Court let Bullion file nine months after the briefing had originally been closed, about prejudice, not a word. One of the frustrating things about this case for Newmont is that every word you just heard counsel say and 5,000 or so words in their opening brief about prejudice were not there in the summary judgment briefing. They don't exist. And I invite you to ---- How do you respond to his argument that even if nobody responded on laches, there would still have to be a foundation of prejudice? I don't agree with that for this reason. And I think this gets into the issue of the presumption of laches. So what this Court has said, for example, in Jarrow and Danjack, was that a presumption arises if the claim is filed outside of the most closely applicable statute of limitations, right? And here the Court found that it's undisputed that that was a six-year contract statute of limitations under Nevada law. And the Court further found that Bullion was on inquiry notice as of 1997, so that it knew or should have known as of then that it had to exercise vigilance at that point in time. That's outside of the period. Once that occurs, a presumption of laches arises. So I disagree with counsel that it was our burden. The burden was on them at that point. Does a presumption of prejudice arise? Yes. I mean, you do have the burden of showing prejudice. Is that right? Initially, correct. If you're making an outlatches argument, you have to show prejudice. I agree with that. And the district judge in his original order, prior to the reconsideration order, discusses prejudice. Yes. So he thinks it's on the table. Right? Well, the judge did two things. Here's ‑‑ I'll tell you exactly what the judge said. He did say two things. First, he said, in short, I'm looking at page 24 of the excerpts of record. Actually, he says this twice. He said it initially before beginning his discussion. And then he says it again. He says, in short, Bullion has not contested the second prong of the laches inquiry, comma, that Newmont was prejudiced by Bullion's delay in bringing suit. That's one ruling. Then he says, moreover. So he's saying, essentially, it's two different separate rulings. Moreover, the undisputed evidence in the record requires a conclusion that Newmont was prejudiced by the delay. So this court says both. The court says it was waived, but I'm looking at the evidence anyway, and I'm finding prejudice, just in case, you know, appellate court, you're going to look at this. So he's doing bail and suspenders. Correct. Correct. Right. So let's get to the merits of prejudice, if you don't mind. It's ‑‑ one of the problems with the cases postured is that there was no finding that you would have ‑‑ that Newmont would not have made the expenditures. And I don't think expenditure enough is enough in this context, perhaps. I know you may disagree with that. So tell me what your position is on ‑‑ you have a little more nuanced position. Would you describe it for us? Here's our position. First of all, if you look at the mining cases we cited, Patterson, Johnson, Cassidy, Moncrief, O'Hanlon, there's nothing in any of these cases indicating that a requirement to prove up prejudice is that the producer would indeed have not gone forward with the project. And in all of these cases, there was some fractional interest. None of these cases involved a plaintiff coming in and saying, you don't own this, I own this. All of them were fractional interests of some sort. There were more than were at issue here, but they were one‑eighth to one‑third. Most of them were one‑quarter. And there is no indication in any of these cases that courts were requiring that, in fact, you need to show that if plaintiff had come along earlier and sued, you would have stopped, halted production, you would have deferred, you would have delayed, anything like that. So I would disagree with counsel that, in fact, that's a requirement. I'm not sure that makes any sense, though. I mean, it seems to me, it's like, the logic seems a bit circular. In other words, they were damaged and, therefore, they can't recover. It's more than that. It's the expenditures are, A, made over a long period of time, as they were here, $700 million over an 11‑year period. So that's one. And you look at the fact, the key thing in all of these cases is the risk. So there, mining involves enormous risks. And there's enormous risks before you ever even start producing. There's amazing development costs. There were even back in 1893, and now, of course, there are hundreds of millions or sometimes billions of dollars. And so the notion is, you're out there going and taking these risks, and if plaintiff had come in and sued earlier, well, at least you've got that information, because you can't go back at one point in time and say, okay, or it would be very on July 1, 2003, you know, this ore would have become dirt to us, because, you know, of the 500 different metrics we look at when we decide whether we're going to produce out of a mining property. But don't you have to say something like that in an affidavit, that it would affect our business judgment to go forward, at least that bald assertion? Well, I mean, I guess what I'm driving at, I'm not sure this expenditure is quite enough. Let me put something else together with that, Your Honors. If you look at the production when it occurred here, when the royalties were paid, it exactly matches this period in time when bullion was defunct. Bullion, as you might recall, let itself be dissolved because it failed to file an annual report with the Utah Corporations Department. And that was in August of 1999. And they were not fully reinstated until 2006, after the Fairness Hearing. So for seven years, they didn't exist because of their own negligence. Yeah, but what's that have to do with the answer to Judge Thomas' question? Here's what it has to do with it. And that was the prime producing period here for these mines. If you look at, it would be two excerpts of record, pages 119 to 125. You will see a chart that we provided to counsel. Okay, well, I'll accept that. But what I'm struggling with is this. I mean, your company was on at least written notice of the 79 agreement. They knew there was some risk. They go defunct. You say, well, it's lowered risk. But that's still a risk that you took into consideration. And if you bear the consequences of that risk, I'm not sure it equates to go forward. I'm not sure it equates to prejudice. I don't think we do, Your Honor. I mean, the defendant's knowledge doesn't stop the clock from ticking. I think this Court said that in the Danjack case. It is plaintiff's knowledge that is relevant here. And so we don't have to show that, well, we had this idea presumably in all these mining cases that we cited. There was knowledge. I think we can more than presume it. We can look at the facts. There was knowledge that someone else was out there with a potential claim. And they went forward anyway. How does all this fit? You have prejudice information in your pleadings. It may be a question of what does it mean. But it's there. And then the prejudice issue in terms of an attack on the foundation of prejudice isn't made until the motion to dismiss. So the motion to reconsider, a motion for reconsideration. So how does that fit with the district court's obligation at the outset? And you're the presumption shifting once you've put in the foundation. Well, here's how I think that would work. Court finds that, indeed, this was filed outside of the limitations period. Presumption arises. And then court says, you've waived the issue, but I'm going to look at prejudice as well. And then finally, there's a motion for reconsideration, and the court there has, you know, very broad discretion in deciding whether to reach it or not. The court again there says, you waived it, and, oh, by the way, I looked at the evidence and decided that there was prejudice. So that's how it played out here. And, again, there was no argument. There was no objection. There was not one word saying, no, there isn't prejudice, until the motion for reconsideration. And so I suppose we could have come back with an affidavit explaining about the risks, although I think the risks were self-evident in the amount of money that was spent here. But, again, we were never put to task on that. Let me ask you this. It comes up cleanly in the motion for reconsideration. I'm not sure how cleanly it came up, if at all, prior to that time. I understand the prejudice argument with respect to the two properties that have been developed. Whether there's prejudice or not, I'm not going to say. But I understand the argument that there's a plausible argument for prejudice, because there's been expenditure. And the question is, okay, would you have otherwise made it? But what about the properties that are within the area of interest and potentially subject to a valid claim by Bullion as to which there have been no expenditures yet? Why is there laches as to those properties and those potential royalties? Okay. First of all, Your Honor, again, not one word, not a word in either the response to the summary judgment motion or the supplement filed nine months later about this issue. So, once again, this issue has been thoroughly waived. Well, I wonder. Let me ask it this way. Let's say that, okay, we just affirm across the board on laches for the case that we have here. Okay. Your client next year starts investing substantial amounts in one of the so far undeveloped properties, and Bullion now brings suit for payment of royalties on that property. Right. What happens? No royalties are owed. Well, let me ask it this way. Let's say that the claims in this case, from both sides, there were mirror image declaratory judgment claims that you think is ratio decada for all properties, even those for which there's been no expenditure whatsoever. That's exactly right. That's the summary judgment's match in terms of it's an everything proposition. Yeah. Well, except for damages. Damage. Right. Yeah. Except for damages. But both parties moved for summary judgment and said, we want a declaratory judgment. We said that they have no rights under the AOI clause, and their argument was that we do have rights. Yeah. Absent the waiver, and that's a very real argument. I'm not putting it to one side for all purposes, but I want to say, absent the waiver, I have trouble understanding how there can be laches for the properties as to which there's so far been no development, no expenditure. I understand. And here is our position on it, that Deep Post and Deep Star, you know, you always get focused on something that comes into court, and this is so out of scale that it is. Yeah. Deep Post and Deep Star were the only two properties, in our view, that we did, we acquired after December 23, 1991, when we entered into the joint venture with High Desert, which became Barrick. And so we provided information for those two properties. That's the position that we took in the court, and that's why we provided that information. Now, again, I know you don't want to talk about waiver, but I suppose if they had been I don't know. We've been talking about nothing but waiver. But that's my response to that. Okay. I assume lying behind this, if the suit were to go forward, there are other questions, for example, rule against perpetuities? There are, Your Honor. And you're going to hear about that next, of course. But there are rule against perpetuities, and we made essentially an identical motion based on the same agreement. Normally, in an appeal, we would perhaps consider bringing the issue up. But here, since there was another case, we did that. There are other issues as well. So even if they get past the latches, they've got other problems. They do have other problems, Your Honor. Okay. I think we have the argument at hand. Any further questions from the panel? No. Thank you very much. Thank you. Got about 40 seconds. Thank you. A couple of points. The cases cited by counsel are ownership cases where one party is allowed to develop a mine, make it more valuable. Somebody else comes along and says, I own that mine. That's not this case. Big distinction. Even the lower court recognized that. As far as risk goes, because of discovery abuses in this case, we got to see attorney-client communications over a decade-long period of time. Neumont was aware of the risk from day one when they entered into an agreement in 1991. As late as 1999, Neumont was told by counsel, don't forget the bully in area of interest royalty. It's out there. A court may rule as valid. They knew the risk. There were tons of research on that. They knew about it from day one. They went forward anyway. Look at the affidavit. In 1997, Neumont said to Bullion, we recognize the area of interest. It's fully enforceable. When we go into production and you're owed money, we'll tell you about it. Don't worry about it. 1997, look at the affidavit in support of the motion for laches. They started making expenditures on these two mines in 1997. They made a decision to go forward with those projects. The same year, they told Bullion not to worry about the area of interest, that Neumont recognized it. I'm afraid my serious problem with your side of the case is your failure to object to prejudice. Is there any way you can convince me or show anything that you did in the district judge raise the issue of prejudice before you get to the motion for reconsideration? Like I said, there were four motions, two combined. We filed our own motion for summary judgment. They all incorporated each other, and our oppositions incorporated each other. We talk about the millions of dollars that have been made in these two mines as well as the Leeville mine, and that's in opposition to the expense. Did they go out and spend $700 million for the fun of it? Heck no. They're making billions of dollars. They're making hundreds of millions of dollars out there. That's what makes sense. I'm specifically wanting you to show me, if you can, any hint of an objection in the district court before it makes an initial ruling that you're saying that there's no prejudice. All I can say, Your Honor, is I'm sure that there are positions taken in the other motions, in the motion that we filed in opposition to the other motions, about the incredible amount of money Neumont is making on these properties. There is no prejudice. Okay. I think we understand your argument. Thank you, counsel. This case, Mr. Hurt, will be submitted for decision.
judges: Thomas, McKeown, Fletcher